IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DR. JOSEPH C. MAJDALANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-cv-894-JTA |
| | ) | |
| AUBURN UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This cause is before the Court on Defendants' Motion to Dismiss Plaintiff's Second

Amended Complaint In Part. (Doc. No. 55.)  Plaintiff has responded to Defendants' motion

(Doc. No. 61) and Defendants have filed a reply (Doc. No. 66).  The parties have consented

to jurisdiction by a United States Magistrate Judge.  (Docs. No. 26, 27, 28.)

For the reasons that follow, the Court concludes that Defendants' motion is due to

be GRANTED in part and DENIED in part.

## I.     BACKGROUND

On October 18, 2018, Dr. Joseph C. Majdalani ("Plaintiff") filed this action.  (Doc.

No. 1.)  On June 18, 2019, Plaintiff filed a Second Amended Complaint against the

following nine defendants: Auburn University ("Auburn"); Steven Leath, former President

of Auburn, in his official capacity; William C. Hardgrave, former Provost for Academic

Affairs at Auburn and current President of the University of Memphis, in his official and

individual capacities; Timothy Boosinger, former Provost of Auburn, in his individual

capacity; John E. Winn, Associate Provost for Faculty Affairs at Auburn, in his official and

individual capacities; Christopher Roberts, former Dean of the Samuel Ginn College of Engineering at Auburn and current President of Auburn, in his official and individual capacities; Brian Thurow, Chair of Aerospace Engineering at Auburn, in his individual and official capacities; R. James Goldstein, former Professor of English at Auburn, in his individual capacity; and Lawrence A. Teeter, Professor Emeritus at Auburn, in his individual capacity (collectively referred to as "Defendants").  (Doc. No. 50 at 1.)  In the Second Amended Complaint, which spans 142 pages, Plaintiff alleges the following eleven causes of action:

Count I - Civil Conspiracy under Alabama Law against defendants Goldstein, Teeter, Thurow, Roberts, Winn, Boosinger, and Hardgrave, in their individual capacities;[1]

Count II - Retaliation Based on Plaintiff's Exercise of His Constitutionally Protected First Amendment Rights against defendants Boosinger, Winn, Roberts, Thurow, and Hardgrave in their individual capacities;[2]

Count III - Request for Injunctive Relief to Address Defendants' Continued Violation of Plaintiff's First Amendment Rights against defendants Winn, Roberts, and Thurow in their official capacities;[3]

---

[1] (*See* Doc. No. 50 at 91-100.)

[2] (*See* Doc. No. 50 at 101-08.)

[3] (*See* Doc. No. 50 at 109-12.)  Regarding Plaintiff's request for injunctive relief, defendants Leath and Hardgrave are listed in this count, but they are no longer associated with Auburn University. Thus, there is no injunctive relief available as it relates to these defendants as there is no reasonable expectation for the alleged violation to recur.  *See Dow Jones & Co., Inc. v. Kaye*, 256 F. 3d 1251 (11th Cir. 2001) (Claim for injunctive relief may become moot if: (1) it can be said with assurance that there is no reasonable expectation that alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated effects of alleged violations.)

2

Count IV - Violations of Title VII of the Civil Rights Act (Race/National Origin-Based Discrimination) against defendant Auburn;[4]

Count V - Violations of Title VII of the Civil Rights Act (Hostile Work Environment) against defendant Auburn;[5]

Count VI - Violation of Title VII of the Civil Rights Act (Retaliation) against defendant Auburn;[6]

Count VII - Violation of 42 U.S.C. § 1981 (Race-Based Discrimination, Harassment, and Retaliation) against defendants Boosinger, Winn, Thurow, Roberts, and Hardgrave in their individual capacities;[7]

Count VIII - Conspiracy to Violate Plaintiff's Civil Rights against defendants Goldstein, Teeter, Thurow, Roberts, Winn, Boosinger, and Hardgrave in their individual capacities;[8]

Count IX - Defamation of Character against defendants Thurow, Roberts, Winn, Boosinger, and Hardgrave in their individual capacities;[9]

Count X - Breach of Contract against defendants Thurow, Roberts, Winn, Boosinger, Hardgrave, and Leath in their official capacities;[10] and

Count XI - Invasion or Infringement Against Plaintiff's Right of Privacy against defendants Thurow, Roberts, Winn, and Boosinger in their individual capacities.[11]

(*See* Doc. No. 50.)

---

[4] (*See* Doc. No. 50 at 112-18.)

[5] (*See* Doc. No. 50 at 118-20.)

[6] (*See* Doc. No. 50 at 121-22.)

[7] (*See* Doc. No. 50 at 122-25.)

[8] (*See* Doc. No. 50 at 125-28.)

[9] (*See* Doc. No. 50 at 128-38.)

[10] (*See* Doc. No. 50 at 138-9.)

[11] (*See* Doc. No. 50 at 139-41.)

According to the Second Amended Complaint, Plaintiff was born in Lebanon and is of the Semitic race.  Plaintiff became a citizen of the United States in 1993.  Prior to August 31, 2013, Plaintiff was employed as a professor of Mechanical and Aerospace Engineering at the University of Tennessee Space Institute where he was the Arnold Chair of Excellence in Advanced Propulsion.  Plaintiff applied for and received the position of Chair of the Aerospace Engineering Department at Auburn, which he assumed on September 1, 2013.  Plaintiff remains employed at Auburn as a tenured professor, though he is no longer Chair of Aerospace Engineering.

Plaintiff claims that while he served as Chair of Aerospace Engineering, certain professors and administrators at Auburn – owing to their personal, racial, or national origin-based biases – conspired to terminate his employment first as chair and then as a tenured professor.  Moreover, Plaintiff alleges that while chair he endured ridicule, insults, deliberate isolation, and race and national origin-based discrimination.  Plaintiff further alleges that Defendants forced him from his position as Department Chair because of a conspiracy fueled by racial animus and jealousy.  Thereafter, while Plaintiff remained a tenured professor, Defendants, again motivated by racial animus, relied on ill-gotten third-party information from an organization with which Plaintiff associated and served as a volunteer judge for student papers, to attempt to discharge Plaintiff from his employment.  Indeed, a Faculty Dismissal Hearing Panel voted on September 29, 2018, to dismiss Plaintiff from Auburn.  Following Plaintiff's appeal to the President of Auburn, Leath reversed the Faculty Dismissal Hearing Panel's vote.  Furthermore, Plaintiff contends

Defendants retaliated against him for filing a charge against Auburn with the Equal Employment Opportunity Commission ("EEOC").

Defendants filed the instant motion to dismiss on July 12, 2019, asking the Court to dismiss Plaintiff's Second Amended Complaint, in part, based on the affirmative defense of qualified immunity and Plaintiff's failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).   (*See* Doc. No. 55.) Specifically, Defendants contend Plaintiff's First Amendment claims are barred by law and prohibited by qualified immunity.  Likewise, Defendants maintain that Plaintiff's claim for injunctive relief is unsupported, and the remainder of Plaintiff's assertions, including his Title VII and state law tort actions, are insufficiently pleaded.  Defendants do not move to dismiss Count VII under Rule 12(b)(6), but state in a footnote that Count VII "should be dismissed for the same reasons set forth above" for Count IV "[t]o the extent the allegations in Count [IV] allegedly support the claims in Count [VII]."  (Doc. No. 55 at 39 n.19.). Finally, Defendants do not move to dismiss Count IX of Plaintiff's Second Amended Complaint.

## II.   LEGAL STANDARD

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court takes the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To avoid dismissal, the complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).  While Federal Rule of Civil Procedure 8(a) "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  A complaint is insufficient if it "offers labels and conclusions or a formulaic recitation of the elements of a cause of action," or if it "tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 555, 557).  In short, a complaint must provide a "plain statement possess[ing] enough heft to show that the pleader is entitled to relief."  *Twombly*, 550 U.S. at 557 (internal quotations omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III.   DISCUSSION

As a preliminary matter, Plaintiff has agreed to the dismissal of his declaratory judgment requests in Counts IV, V, VI, and he consents to dismissal of Count X in its entirety.[12]  Thus, Counts IV, V, and VI, to the extent they seek declaratory judgments, and the entirety of Count X are due to be dismissed.  Additionally, Plaintiff concurs in the dismissal of the official capacity suit against Leath because he is no longer employed by

---

[12] Count X was the only count to which Defendants raised sovereign immunity as a defense; thus, to the extent Defendants' motion was based on Federal Rule of Civil Procedure 12(b)(1), that issue is moot.

Auburn.  (Doc. No. 61 at 6.)  Similarly, the Court takes judicial notice that Hardgrave is also no longer employed by Auburn.[13]  Hence, Plaintiff's allegations against Hardgrave and Leath in their official capacities, consequently, are due to be dismissed.  The Court considers each of the challenged causes of action seriatim.

A.  Count I – State Civil Conspiracy

Plaintiff first alleges that Goldstein, Teeter, Thurow, Roberts, Winn, Boosinger, and Hardgrave, in their individual capacities, engaged in a tortious civil conspiracy under Alabama law.  (Doc. No. 50 at 91–101.)  To succeed on a civil conspiracy claim in Alabama, a plaintiff must show: "(1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means."  *Ex parte Maintenance Grp.*, 261 So. 3d 337, 347 (Ala. 2017) (citing *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000)).  The conspirators must also commit, or further, an underlying wrongful act.  *See Ala. Psych. Servs. v. Ctr. for Eating Disorders, LLC*, 148 So. 3d 708, 715 (Ala. 2014) (quoting *Drill Parts & Serv. Co. v. Joy Mfg.*, 619 So. 2d 1280, 1290 (Ala. 1993)).  As a matter of necessity in some cases, "a plaintiff may present circumstantial evidence" to establish a conspiracy.  *Luck*, 763 So. 2d at 247 (citing *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988)).

---

[13] Federal Rule of Evidence 201(b)(2) permits courts to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Here, the University of Memphis's official, publicly available website notes that William C. Hardgrave, formerly Provost at Auburn, is the President of the University of Memphis.  *See* Meet Dr. Hardgrave, Office of the President, Univ. of Mem., https://www.memphis.edu/president/about/index.php.  The Court, accordingly, judicially notices that Hardgrave is no longer employed at Auburn.

Defendant argues that Plaintiff's pleadings regarding civil conspiracy are insufficient because Plaintiff cannot establish the underlying wrongful actions involved. (Doc. No. 55 at 55–58.)  This is true for Goldstein and Teeter, who are only otherwise accused of conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1985 (Count VIII).  The underlying wrongful action for a civil conspiracy claim cannot be the conspiracy itself.  Indeed, Plaintiff omitted from his response (Doc. No. 61) any reliance on Count VIII as the underlying support for his state law civil conspiracy claim in Count I.  (*Id.* at 16–17.)

Yet, for the remainder of Defendants accused of civil conspiracy under Alabama law, Plaintiff's claim may proceed.  Defendants do not challenge Plaintiff's defamation claim, which is Count IX in the Second Amended Complaint, asserted against Thurow, Roberts, Winn, Boosinger, and Hardgrave.  Moreover, as noted later herein, Plaintiff's claims in Counts II, VII, and XI, which are all asserted against the same Defendants in their individual capacities, will proceed.  Because those claims, which are viable underlying actions to support civil conspiracy, proceed so do Plaintiff's civil conspiracy claim.

Nevertheless, Defendants contend that Plaintiff's civil conspiracy allegations, at least to the extent they refer to conduct before Plaintiff's tenure as department chair ended, are barred by the two-year statute of limitations under Alabama Code § 6-2-38.  In Alabama, the statute of limitations for civil conspiracy merges with that of the underlying claim involved.  *See Boyce v. Cassese*, 941 So. 2d 932, 944 (Ala. 2006) (citing *Kelly v. Alexander*, 554 So. 2d 343, 344 (Ala. 1989), *overruled on other grounds by Ford Motor Co. v. Neese*, 572 So. 2d 1255 (Ala. 1990)).  For First Amendment retaliation, defamation,

and invasion of privacy, the statute of limitations is two years.  Ala. Code. §§ 6-2-38(k)-(l); *DeYoung v. Owens*, 646 F.3d 1319, 1324 (11th Cir. 2011).   For the race-based discrimination, harassment, and retaliation claims in Count VII, as Defendants concede, the statute of limitations is four years.  (*See* Doc. No. 55 at 56.)   Alabama does not recognize a discovery rule except in cases of fraudulent concealment, which Plaintiff has not specifically alleged here.  *See DGB, LLC v. Hinds*, 55 So. 3d 218, 225–26 (Ala. 2010).  Accordingly, Plaintiff's civil conspiracy claim is dismissed to the extent it relies on First Amendment retaliation (Count II), defamation (Count IX), and invasion of privacy (Count XI) before October 18, 2016.  However, Plaintiff's civil conspiracy action related to the underlying federal claim in Count VII may proceed in its entirety.

B.  Count II – First Amendment Retaliation

Plaintiff next claims that Boosinger, Winn, Roberts, Thurow, and Hardgrave, in their individual capacities only, retaliated against him for engaging in protected First Amendment activities.  (Doc. No. 50 at 101–08.)   Specifically, Plaintiff alleges that "Defendants retaliated against him when he exercised his right to freely associate and engage in associative free speech."  (*Id.* at 101.)   This retaliation took the form of "defam[ing] Plaintiff, harass[ing] Plaintiff, and as part of that harassment intentionally, maliciously, and in bad faith subject[ing] him to a costly, unwarranted, and rigged dismissal process."  (*Id.* at 101–02.)

Defendants move to dismiss Plaintiff's First Amendment retaliation claim on two grounds.  First, Defendants contend Plaintiff's claims are barred as a matter of law because his allegations relate to speech that is not on a matter of public concern.   Second,

Defendants maintain Plaintiff's First Amendment action cannot overcome qualified immunity. (Doc. No. 55 at 11–33.)  Defendants do not contest that they are subject to 42 U.S.C. § 1983; they challenge only the purported underlying constitutional deprivation. (*Id.* at 11–12.)  Plaintiff responds that his claims are based on his association with the American Institute of Aeronautics and Astronautics ("AIAA"), not speech based on his score sheets themselves, and Plaintiff's speech related to his dismissal proceedings was protected.  Moreover, Plaintiff retorts that Defendants' assertion of qualified immunity is not ripe for adjudication. (Doc. No. 61 at 16.)

The Court is not tasked with weighing evidence on a Rule 12(b)(6) motion; rather, the Court accepts as true the well-pleaded allegations in the Second Amended Complaint and construes those facts in the light most favorable to the Plaintiff.  *See Resnick*, 693 F.3d at 1321–22. From the four corners of the Second Amended Complaint, Plaintiff is asserting that Defendants violated, through retaliation, his right to associate with the AIAA, his associative speech included in his scoring, and his speech regarding the dismissal proceedings against him. (*See* Doc. No. 50 at 103) ("[H]is protected speech and associated with the AIAA were the basis for his termination . . . .").

## 1.  Plaintiff's First Amendment Retaliation Claims

Given that Plaintiff raises both speech and association claims, the Court analyzes Plaintiff's allegations for both to see if they allege causes of action as a matter of law.  The Eleventh Circuit has previously noted, "[t]he First Amendment protects the right of public employees to associate, speak and petition freely . . . ." *Ga. Ass'n of Educators v. Gwinnett Cty. Sch. Dist.*, 856 F.2d 142, 145 (11th Cir. 1988).  There are two types of recognized

freedoms of association: intimate and expressive, of which only expressive is at issue here.

*Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017).   The Eleventh Circuit has

proclaimed:

> The right of expressive association—the freedom to associate for the purpose
> of engaging in activities protected by the First Amendment, such as speech,
> assembly, petition for the redress of grievances, and the exercise of
> religion—is protected by the First Amendment as a necessary corollary of
> the rights that the amendment protects by its terms.

*Id.* (quoting *McCabe v. Sharrett*, 12 F.3d 1558, 1562–63 (11th Cir. 1994)).

The right to association is not limited solely to those associations meant to express

shared beliefs.  Instead, the right to association includes situations in which "two [or more]

individuals seek to associate with each other, without any evidence of promulgating and

advancing political or religious beliefs . . . ."  *Wilson v. Taylor*, 733 F.3d 1539, 1544 (11th

Cir. 1984), *overruled on other grounds by Pembaur v. City of Cincinnati*, 475 U.S. 469

(1986).  For pure association claims—those which do not rely on underlying safeguards

such as the rights to speech, religion, or petition—a public employee need not establish

that their conduct was a matter of public concern.  Rather, the plaintiff need only properly

allege that they were engaged in a protected activity and that activity "was a substantial or

motivating factor in the decision to take adverse employment action against the plaintiff."

*Hatcher v. Bd. of Pub. Ed. and Orphanage for Bibb Cnty.*, 809 F.2d 1546, 1556 (11th Cir.

1987) (quoting *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).  A public

employee plaintiff, however, must show that their associational activities were undertaken

in their role as a citizen rather than a public employee.  *See D'Angelo v. Sch. Bd. of Polk

Cnty.*, 497 F.3d 1203, 1212 (11th Cir. 2007).  Finally, courts apply the *Pickering* balancing

11

test to determine if a plaintiff's interest in free association outweighs the government's interest in effective and efficient administration of its duties.  *See Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318–20 (11th Cir. 2005) (citing *Ross v. Clayton Cnty.*, 173 F.3d 1305, 1310 (11th Cir. 1999)); *see also Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen . . . and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

Plaintiff attempts to assert two claims based on the right to association.  First, Plaintiff alleges that Defendants retaliated against him because of his voluntary association with the AIAA as a volunteer judge.  Second, Plaintiff contends that Defendants retaliated against him because of the scores he provided as a volunteer judge at an AIAA competition in April 2016.  (Doc. No. 50 at 101–09.)  From the face of the Second Amended Complaint, taking its allegations as true and construing them in the light most favorable to Plaintiff, the purely association claim will proceed while Plaintiff's "associative speech" claim will be dismissed.

i.    Plaintiff's Association Claim

Plaintiff first alleges that Defendants retaliated against him because of his association with the AIAA.  (*Id.* at 101–03, 107.)  Specifically, the Second Amended Complaint declares, "Plaintiff asserts Defendants retaliated against him when he exercised his right to *freely associate* . . . ."  (Doc. No. 50 at 101, ¶ 412) (emphasis added).  Likewise, the Complaint states, "In the spring of 2016, Dr. Majdalani's *voluntary association* with

the AIAA as a judge occurred while he was on a leave of absence from his position with

Auburn University." (*Id.* at 102–03, ¶ 418) (emphasis added).  Finally, Plaintiff alleges:

> Because Dr. Majdalani expressed his views while associated with the AIAA
> as a technical judge. Defendants took steps to punish him by defaming his
> character, harassing him, subjecting him to disparate terms and conditions of
> employment, moving to terminate his employment, and causing him
> substantial personal loss. The same was done to prevent his future
> *association* with the AIAA as a judge.

(*Id.* at 107, ¶ 429) (emphasis added).

Associating with one or more people for purposes other than political or religious

beliefs is a protected activity for citizens as well as public employees such as Plaintiff.  *See*

*Wilson*, 733 F.3d at 1544.  Thus, Plaintiff has established that he was engaging in a

protected activity while associated with the AIAA.  Plaintiff also has plausibly pleaded that

the dismissal proceedings against him were motivated by his association with the AIAA

and "to prevent his future association with the AIAA . . . ."  (*See* Doc. No. 50 at 107, ¶

429.)  Plaintiff further has sufficiently alleged that his association with the AIAA was in

his role as a citizen rather than an Auburn employee.  Plaintiff stated, "[i]n the spring of

2016, Dr. Majdalani's voluntary association with the AIAA as a judge occurred while he

was on a *leave of absence* from his position at Auburn University." (*Id.* at 102–03, ¶ 418.)

Moreover, the *Pickering* balancing test weighs, at the Rule 12(b)(6) stage at least,

in Plaintiff's favor.  Auburn's interest in preventing Plaintiff from associating with the

AIAA is minimal while Plaintiff's interest in engaging in associative activities within his

academic field and profession likely is somewhat significant.  Auburn has acknowledged

that it does not have an interest in preventing Plaintiff's association with the AIAA; indeed,

Auburn has said that while he served as the AIAA student chapter faculty advisor, Auburn encouraged and required Plaintiff to associate with the AIAA.  (Doc. No. 55 at 28.)  Thus, Auburn had no interest in stopping Plaintiff's association with the AIAA.

Defendants finally contend that Plaintiff has not alleged that he suffered an adverse employment action for his associative retaliation claim.  (Doc. No. 55 at 26.)  Yet, this is simply not true from a fair reading of the Second Amended Complaint.  Plaintiff alleges that he was harassed by his colleagues, the subject of an improper civil conspiracy, and that he nearly lost his job and was subject to a dismissal proceeding because of his association with the AIAA.  (Doc. No. 50 at 101–08.)  These consequences of Plaintiff's exercise of his right to association would be enough to "deter a person of ordinary firmness from the exercise of First Amendment rights."  *Echols v. Lawton*, 913 F.3d 1313, 1323 (11th Cir. 2019) (quotation marks omitted) (quoting *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016)).  Thus, Plaintiff's association retaliation claim is not barred as a matter of law.

### ii.    Plaintiff's Associative Speech Claim

Plaintiff next alleges that Defendants retaliated against him for engaging in "associative speech."  (Doc. No. 50 at 101–07.)  Specifically, Plaintiff contends, among other allegations, "Defendants retaliated against him when he exercised his right to freely associate and *engage in associative free speech*."  (*Id.* at 101, ¶ 412) (emphasis added).  Plaintiff adds, "Defendants were aware they had no right to retaliate against Plaintiff for his association with the AIAA and *related associative speech*."  (*Id.* at 102, ¶ 415) (emphasis added).  Similarly, Plaintiff asserts, "[a]s part of his association with the AIAA,

Dr. Majdalani reviewed conference participants' papers, and expressed his views on those papers, which were almost wholly confidential." (*Id.* at 103, ¶ 419.)  Finally, Plaintiff alleges, "Dr. Majdalani's association with the AIAA as a volunteer judge and the associative views he espouses were the stated foundation for the disciplinary/dismissal proceedings to which he was subjected." (*Id.* at ¶ 420) (emphasis added).  Defendant moves to dismiss these allegations as a matter of law because they are based on the right to free speech rather than association and Plaintiff cannot prove his speech was on a matter of public concern or satisfy the *Pickering* test.  (Doc. No. 55 at 13–17.)

The Court agrees with Defendants that Plaintiff's "associative speech" claim is actually about speech and is subject to the *Pickering* test.  Plaintiff's contention is that Defendants retaliated against him because of their erroneous belief that Plaintiff's AIAA scores were improperly provided.  (Doc. No. 50 at 107, ¶ 429) ("Because Dr. Majdalani *expressed his views* while associated with the AIAA as a technical judge, Defendants took steps to punish him . . . .").  Thus, Plaintiff's claim is based on the content of his scores— his speech—rather than his association.

Plaintiff's allegations, even taken as true, fail the *Pickering* test.  To determine whether the government has retaliated against a public employee based on protected speech, the court performs a four-step analysis.  *Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) (citing *Pickering*, 391 U.S. 563).  According to the Eleventh Circuit:

> First, we consider whether the employee's speech is fairly characterized as constituting speech on a matter of public concern. If it is, we apply the *Pickering* balancing test, which weighs the employee's free speech interest against the interest of the state, as an employer, in promoting the efficiency of the public services it performs. If the employee's interests outweigh those

of the state as an employer, we turn to the third prong: whether the speech played a substantial part in the government's decision to discharge the employee. If it did, we must address the fourth prong, which is whether the government has shown by a preponderance of the evidence that it would have discharged the employee regardless of the protected conduct.

*Id.* at 1122–23 (quotation marks and internal citations omitted).

Defendants assert that Plaintiff's speech, his AIAA scores, were not a matter of public concern. (Doc. No. 55 at 13.) Plaintiff himself implicitly concurs with this conclusion. Plaintiff acknowledges that his scores were supposed to be confidential. (Doc. No. 50 at 103–04.) Accordingly, scores that Plaintiff himself believed would remain private could not at the same time be deemed to touch on a matter of public concern. Plaintiff's speech was not a matter of concern and was not protected from retaliation. Hence, Plaintiff's "associative speech" claim is due to be dismissed.

### iii.   Retaliation for Plaintiff's Discrimination Complaints

Plaintiff also contends Defendants retaliated against him by continuing dismissal proceedings against him, subjecting him to disparate terms and conditions of employment, and causing him financial loss after learning of his EEOC charge against Auburn. (Doc. No. 50 at 107–08, ¶ 430.) Plaintiff did not provide the date on which he filed his EEOC charge, but Defendant attached it to a previous motion to dismiss (*see* Doc. No. 11-1) and incorporated it in their reply. (Doc. No. 66 at 17.) Because Plaintiff bases his claim on the EEOC charge, the Court may and will, consider Defendants' attachment as part of the pleadings rather than converting the instant motion to a motion for summary judgment. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997). Plaintiff sent his EEOC charge on June 5, 2017, and it was received by the EEOC

on June 14, 2017.  (*See* Doc. No. 11-1 at 2.)  Defendants point out that dismissal proceedings were already scheduled against Plaintiff by the time he filed his EEOC charge; thus, according to Defendants, they could not have retaliated against Plaintiff for filing a charge with the EEOC.  (Doc. No. 66 at 17.)  This argument is only partially correct.

Dismissal proceedings continued against Plaintiff after he sent his EEOC charge. (Doc. No. 50 at 62–63.)  Likewise, Plaintiff asserts that Thurow removed Plaintiff as the assigned instructor for ENGR 6000 in the summer of 2017; though, Plaintiff neglects to provide a date on which Thurow reassigned the course to another instructor.  (*Id.* at 117.) Moreover, the Complaint alleges Plaintiff suffered mocking and harassment after his EEOC charge.  (*Id.* at 74–75.)  While the Court agrees that any allegations of retaliation preceding Plaintiff's filing of the EEOC charge would be barred, Plaintiff has pleaded sufficient facts to establish that he was subject to further retaliation after he submitted his EEOC charge against Auburn.

Having determined that Plaintiff is not chronologically barred from pursuing a speech retaliation claim, the Court next considers whether Plaintiff can satisfy the *Pickering* test.  First, Plaintiff's speech, taking the Second Amended Complaint's factual allegations as true, related to a matter of public concern.  As Plaintiff has noted, and Defendant has agreed, filing an EEOC charge may express a public concern.  (*See* Doc. No. 61 at 38; Doc. No. 66 at 18.)  In this instance, construing Plaintiff's allegations that he and other non-United States native-born professors have experienced race and national origin discrimination at Auburn in the light most favorable to Plaintiff, the EEOC charge was a matter of public concern.

Likewise, Plaintiff's interest in not experiencing discrimination outweighs any interest Auburn could have in permitting discriminatory practices.  Auburn, in fact, does not have an interest in discrimination, and instead would best be served to rid itself of discrimination caused by its employees.  Moreover, Plaintiff has alleged that Defendants retaliated against him as a result of his EEOC charge, so he satisfies the third *Pickering* element that he suffered adverse employment actions because of his speech.  Finally, for the same reasons previously noted, Plaintiff has properly pleaded an adverse employment action.  Therefore, Plaintiff's retaliation claim related to his EEOC charge is not barred as a matter of law at this juncture.

### 2.  Qualified Immunity

Defendants move to dismiss Plaintiff's First Amendment retaliation claims on the basis of qualified immunity as well.  (Doc. No. 55 at 23–28.)  While the affirmative defense of qualified immunity is normally presented at the summary judgment stage, a party may move to dismiss based on the doctrine as well.  *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  The Court should grant a motion to dismiss based on qualified immunity if the Complaint demonstrates that the defendants did not deprive the plaintiff of a clearly established right.  *Id.* (citing *St. George*, 285 F.3d at 1337).  As articulated by the Eleventh Circuit, "[t]he qualified immunity defense shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* (quotation marks omitted) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)).   Discretionary authority refers to those acts that "(1) were undertaken pursuant to the performance of [an official's] duties, and (2) were within the scope of [the official's] authority." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (quotation marks omitted) (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

There are two elements to qualified immunity that a plaintiff must overcome.   First, the plaintiff must show that the defendant deprived them of a constitutional or statutory right.   Second, the plaintiff must demonstrate that at the time of the alleged deprivation the right was clearly established such that a reasonable person would have known that the defendant's conduct violated the right.   *Corbitt*, 929 F.3d at 1311 (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199–1200 (11th Cir. 2001)).   For a right to be clearly established, the right's contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   In the Eleventh Circuit, "the salient question is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional." *Corbitt*, 929 F.3d at 1312 (quotation marks omitted) (quoting *Vaughn v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003)).

Here, taking Plaintiff's allegations as true for purposes of this Rule 12(b)(6) motion, Defendants were not acting pursuant to their discretionary authority when they retaliated against Plaintiff for his association with the AIAA and his EEOC charge.   Hence, Defendants' motion to dismiss count two based on qualified immunity will be denied.   This is not to say that the Court will reach the same decision on a motion for summary judgment; however, reading the Second Amended Complaint's assertions as true, Plaintiff alleges

Defendants acted outside their discretionary authority.  Specifically, Plaintiff has claimed that Defendants knew that the purported AIAA score discrepancies were acontextual. Thus, Plaintiff contends that Defendants defamed, harassed, and plotted to terminate his employment based on his association with the AIAA and his speech—his scores—all without a legitimate basis.  Construing this fact in the light most favorable to Plaintiff, though admittedly a close question, Defendants' actions were not "undertaken pursuant to the performance of [their official] duties."  *Hinson*, 927 F.3d at 1116 (quoting *Jordan*, 38 F.3d at 1566).  Likewise, discrimination, harassment, mockery, invasion of privacy, and defamation were not "within the scope of [their official] duties."  *Id.*  Accordingly, because Defendants may not avail themselves of the qualified immunity doctrine, the Court need not consider whether the rights allegedly violated were clearly established.  Consequently, Defendants' motion to dismiss based on qualified immunity is denied.

In sum regarding Count II, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim is granted in part and denied in part.  Plaintiff's purely association claim is permitted to proceed, while his "associative speech" allegation is due to be dismissed.  Finally, Plaintiff's action based on his speech in the EEOC charge is permitted to continue.  At this stage, the Court finds that Plaintiff has alleged Defendants acted outside their discretionary authority and thereby are not shielded by qualified immunity.

C.  Count III – First Amendment Injunctive Relief

Plaintiff seeks an injunction directing Winn, Roberts, and Thurow, in their official capacities, to cease violating Plaintiff's and others' First Amendment rights and to prevent

20

further unlawful conduct.  (Doc. No. 50 at 109–12.)  Plaintiff asserts that Defendants have

prohibited he and other professors in the Aerospace Engineering Department from

associating with the AIAA and from serving as blind reviewers for academic journals.  The

Second Amended Complaint cites to testimony from Thurow acknowledging that a

professor serving as an independent judge or reviewer for their own work, that of their

colleagues or own students, is a conflict of interest.  (*Id.* at 109–11.)  Contrary to Plaintiff's

assertion, though, Thurow's testimony does not indicate that Auburn has prohibited

Aerospace Engineering professors from associating with the AIAA and similar groups or

from serving as a peer reviewer on an academic journal.  Thurow's testimony, rather, only

discusses the conflict of interest created by a professor acting as an independent assessor

of work in which they may have some vested interest.  (*Id.* at 110–11.)  Nevertheless, the

Complaint does state, "Thurow's actions as the AE Department Chair have resulted in the

establishment of a prohibition against AE professors' association with any organization

while judging student participants' papers."  The Complaint continues, "[t]hat prohibition

continues today."  (*Id.* at 111.)

Taking Plaintiff's assertions as true and construing them in his favor, he has alleged

that Defendants have prevented him, and continue to prohibit him, from associating with

the AIAA and similar organizations.  Plaintiff seeks an injunction requiring Defendants to

cease this prohibition now and not reinstitute it in the future.  (*Id.* at 112, ¶ 447.)  In the

Eleventh Circuit, district courts are not empowered to issue injunctions commanding a

party to merely obey the law.  *See Elend v. Basham*, 471 F.3d 1199, 1209–10 (11th Cir.

2006) (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999)) ("It is

well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible.").

Here, Plaintiff has acknowledged, and this Court has agreed, that Plaintiff has a First Amendment right to associate with the AIAA as a citizen.  This right, nevertheless, may be circumscribed by Auburn if its interest in effective and efficient administration of public services outweighs Plaintiff's interest, as a public employee, in association.  *See Chesser*, 248 F.3d at 1122–23 (citing *Pickering*, 391 U.S. 563).  Thus, if in fact Defendants are prohibiting Plaintiff from associating with the AIAA and like organizations without Auburn's interest outweighing Plaintiff's, Defendants are violating Plaintiff's constitutional right.  In that case, Plaintiff likely has a cognizable cause of action against Defendant; yet, this Court cannot issue the relief Plaintiff presently seeks.  Plaintiff requests an injunction directing Defendants to permit he and others in the Aerospace Engineering Department to associate with the AIAA and like entities, which is their right.  Such an injunction would effectively be this Court ordering Defendants to "obey the law."  Doing so would be inconsistent with the Eleventh Circuit's admonitions, and this Court declines to do so.  Accordingly, Count III is due to be dismissed.

D.  Count IV – Race and National Origin Discrimination

Plaintiff contends that Auburn committed race and national origin-based discrimination against him, among other allegations, by excluding him from essential and non-essential faculty events and meetings, withholding funds from his support account, failing to support his travel, removing his likeness from Department communications, and reassigning courses he was scheduled to teach.  (*See* Doc. No. 50 at 112–18.)  Auburn

moves to dismiss this allegation primarily because Plaintiff has not alleged an adverse employment action.[14]  (Doc. No. 55 at 39.)  The Court disagrees.

An adverse employment action is any action that constitutes "a serious and material change in the terms, conditions, or privileges of employment."  *Herron-Williams v. Ala. St. Univ.*, 287 F. Supp. 3d 1299, 1311 (M.D. Ala. 2018) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington Northern and Santa Fe Ry. v. White*, 548 U.S. 53 (2006)).  Plaintiff alleges multiple potential adverse employment actions suffered at Defendants' hands.  Plaintiff claims he was excluded from faculty search processes, he was prevented in engaging in faculty discussions, he was prohibited from voting on faculty candidates who received offers to join his Department, denial of travel support, and malicious reassignment of cases he was scheduled to teach.  (*See* Doc. No. 50 at 113–17.)  Auburn does not view these as adverse employment actions because Plaintiff continues to enjoy tenured employment, Title VII does not create a cognizable action for civility, and Plaintiff had no expectation to teach courses assigned to him.  (Doc. No. 55 at 37–39.)  Yet, as alleged, Plaintiff has suffered "a serious and material change in the terms, conditions, or privileges of employment."  *See Herron-Williams*, 287 F. Supp. 3d at 1311.  Plaintiff was excluded from faculty votes and meetings in which he otherwise had a right, as a condition and privilege of his employment, to participate.  Moreover, because of race and national origin-based discrimination, Plaintiff was unable to teach a course he otherwise would have taught, and teaching is a

---

[14] Plaintiff agrees that the only question implicated in the instant motion regarding Count IV is whether he was subject to an adverse employment action.  (Doc. No. 61 at 44.)

condition or privilege of Plaintiff's employment.  This reassignment also cost Plaintiff no less than $10,000.  Accordingly, it is evident that based on Plaintiff's well-pleaded factual allegations, he has asserted an adverse employment action.  Defendants' motion to dismiss Count IV, consequently, is due to be denied.[15]

E.  Count V – Hostile Work Environment

Plaintiff likewise advances a hostile work environment claim against Auburn pursuant to Title VII of the Civil Rights Act of 1964.  Plaintiff maintains he endured harassment, defamation, and a baseless, costly dismissal process from Auburn's agents. (Doc. No. 50 at 118–20.)  Defendants move to dismiss asserting that the purported harassment was not severe or pervasive enough to receive Title VII protection, and that Plaintiff has not adequately pleaded that the harassment was based on his race or national origin.  (Doc. No. 55 at 41.)  Again, taking Plaintiff's allegations as true and construing them in the light most favorable to Plaintiff, the Court disagrees.

To succeed on his Title VII hostile work environment claim based on racial or national origin-based discrimination, Plaintiff must show:

> (1) he belongs to a protected group; (2) he suffered unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as national origin [or race]; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for that environment under a theory of either direct liability or vicarious liability.

---

[15] To the extent Defendants moved to dismiss Count VII because it was based on the allegations in Count IV, said motion is denied for the same reason the Court denies Defendants' motion to dismiss Count IV.

*Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

The only elements at issue here are whether the harassment was severe and pervasive and whether the harassment was based on Plaintiff's race or national origin. (Doc. No. 55 at 41–45.)  First, Plaintiff has adequately alleged that the harassment he endured was predicated on his race or national origin.  (*See* Doc. No. 50 at 9, ¶ 47; 13, ¶¶ 64–70; 15, ¶ 81; 16, ¶¶ 83–84; 17, ¶¶ 89–90; 18, ¶ 96; 20, ¶¶ 111–12; 21, ¶ 115; 22, ¶ 118; 24, ¶ 130; 50, ¶ 248; 55, ¶ 247; 67–68, ¶ 324; 90–91, ¶ 390; 118, ¶ 465; 119, ¶ 467.) Plaintiff has pointed out that members of the faculty and administration at Auburn possessed racial and national origin-based animus that manifested itself in their actions toward him, including their harassment.  (*Id.*)

Second, Plaintiff's allegations, taken as true and construed in his favor, establish severe and pervasive harassment.  The Supreme Court has declared that this requirement has both an objective and subject component such that "to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[d] to be abusive."  *Miller*, 277 F.3d at 1276 (quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 367, 370–71 (1993)).  Courts consider four factors to determine whether the harassment was objectively pervasive and severe: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the

employee's job performance." *Id.* (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)).

Preliminarily, Plaintiff alleges that he subjectively believed his work environment to be hostile; thus, the subjective component of the pervasive and severe test is satisfied. (Doc. No. 50 at 119, ¶ 467.)  Next, following a consideration of the objective factors, the Court finds that Plaintiff's hostile work environment allegation may proceed beyond the Rule 12(b)(6) motion stage.  First, the harassment, as contended by Plaintiff, was frequent; in fact, Plaintiff alleges constant harassment by virtue of the rigged dismissal process.  (*Id.*) Moreover, Plaintiff claims Defendants "over a two-year period, repeatedly and routinely defam[ed] him . . . ."  (*Id.*)  Second, the conduct was at least moderately severe as laid out in the Complaint.  Defendants undertook a concerted effort over multiple years to defame and destroy Plaintiff's reputation and career so they could remove him as Department Chair and strip him of an academic position in which he had a vested property interest despite knowing their evidence was unfounded.   Plaintiff worked under these same people throughout this period and was threatened and mocked by them on occasions.  Construing these facts in the light most favorable to Plaintiff, this conduct was severe.

Third, Auburn's agents did not physically threaten Plaintiff but rather spread offensive utterances about him to others, directly to him, and attempted to baselessly terminate his employment.  Plaintiff alleges this caused him mental anguish and loss of reputation.  The third factor, because of the lack of physical intimidation but the presence of some humiliation and loss of reputation, favors neither party.  Finally, the harassment unreasonably interfered with Plaintiff's job performance.  It did so by altering the classes

Plaintiff taught, requiring Plaintiff to engage in an erroneously based dismissal process, curtailing Plaintiff's work-related travel, and defaming Plaintiff's academic reputation. Thus, the fourth factor leans in Plaintiff's favor.  On balance, the Court concludes that Plaintiff was subjected to severe and pervasive harassment because of his race or national origin.  The motion to dismiss Count V is due to be denied.

F.  Count VI – Civil Rights Retaliation

Plaintiff accuses Auburn of retaliation for a protected activity because, after Thurow learned of Plaintiff's EEOC charge, Thurow reassigned to another professor a class Plaintiff was scheduled to teach, which cost Plaintiff at least $5,000.  (Doc. No. 50 at 121.) Defendants move to dismiss by asserting Plaintiff did not suffer an adverse employment action.  (Doc. No. 55 at 40.)  Notably, Plaintiff has not pleaded on what date Thurow learned of Plaintiff's EEOC charge or on what date Thurow removed Plaintiff as the instructor for ENGR 6000 for Summer 2017.

Defendants claim, as a matter of law, that an institution of higher learning may assign whomever it wishes to teach the courses it offers.  Defendants rely on two cases for this proposition.  Neither case supports their position in the way it contends.  First, Defendants cite to the Eleventh Circuit's holding in *Gupta v. Florida Board of Regents*, which found that a professor who was inadvertently assigned to teach at three campuses and who did not receive the teaching assignment for a summer semester that she sought had not alleged an adverse employment action.  *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 588 (11th Cir. 2000), *overruled on other grounds by Burlington Northern and Santa Fe Ry.*, 548 U.S. 53 (2006).  The Eleventh Circuit noted, "[a] university can assign its

professors to teach the classes it needs them to teach." *Id.*  The Circuit continued, though, "[Gupta] presented no evidence at all that she was in any way entitled to or particularly deserving of that class, as opposed to the class she was assigned to teach . . . ." *Id.*  That is not the case here.  Plaintiff has plead that he developed the ENGR 6000 course, that he was already assigned to teach the course, and that Thurow only removed him after receiving Plaintiff's EEOC charge.  Consequently, Plaintiff has alleged that he was "entitled to or particularly deserving of that class." *Id.*

Defendants also refer to Justice Felix Frankfurter's concurring opinion in the Supreme Court's holding in *Sweezy v. State of New Hampshire by Wyman* in which Justice Frankfurter referred to one of a university's "essential freedoms" as determining "who may teach."  *See Sweezy v. N.H. ex rel. Wyman*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring).  Yet, as the Court itself noted in later cases, Justice Frankfurter's comment must be read in the context of the *Sweezy* case, which dealt with content-based speech regulation.  *See Univ. of Pa. v. EEOC*, 493 U.S. 182, 197 (1990).  Because Justice Frankfurter's concurrence is not controlling authority and is distinguishable from the facts of this case, the Court does not find its admonition binding.

Given that Plaintiff alleges Thurow reassigned him from teaching ENGR 6000, a course which Plaintiff developed and was previously assigned to teach, solely because of Thurow's receipt of Plaintiff's EEOC charge, Plaintiff's reassignment was an adverse employment decision.  Moreover, this conclusion is supported by Plaintiff's assertion that he lost at least $5,000 because Thurow removed him as instructor for ENGR 6000.  Because Defendants only moved to dismiss based on the lack of an adverse employment

action and relied upon two cases that do not stand for the propositions they posit, the motion to dismiss Count VI is due to be denied.

G.  Count VIII – Civil Rights Conspiracy

Plaintiff next alleges that Goldstein, Teeter, Thurow, Roberts, Winn, Boosinger, and Hardgrave, in their individual capacities, conspired to violate his civil rights in contravention of 42 U.S.C. § 1985.  (Doc. No. 50 at 125–28.)  Defendants move to dismiss this action for violating the statute of limitations and pursuant to the intracorporate conspiracy doctrine.  (Doc. No. 55 at 52–55.)

1.  Statute of Limitations

Because no statute of limitations is specified by 42 U.S.C. § 1985, the applicable statute of limitations is that of the most analogous state cause of action.  Accordingly, as the parties concede, the applicable statute of limitations for Plaintiff's civil rights conspiracy claim is two years.  (*See id.* at 52; Doc. No. 61 at 49.)  Moreover, while the length of the statute of limitations is two years pursuant to state law, the determination of when a cause of action accrues is a matter of federal law.  *See Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).  A statute of limitations begins to run when "the plaintiff knows or has reason to know that he has been injured" and "the plaintiff is aware or should have been aware who has inflicted the injury."  *Id.* (citing *Calhoun v. Ala. Alcoholic Beverage Control Bd.*, 705 F.2d 422, 424 (11th Cir. 1987)).

The parties disagree when Plaintiff's cause of action accrued and thereby commenced the two-year statute of limitations.  Defendants move to dismiss all conspiracy allegations related to Plaintiff's resignation as Chair of Aerospace Engineering, which

29

occurred when he signed a resignation letter on February 3, 2016, that became effective on May 16, 2016.  (Doc. No. 50 at 22–23; Doc. No. 55 at 52–53.)  Plaintiff did not file the instant action until October 18, 2018, which, of course, was more than two years following his resignation as Chair.  (*See* Doc. No. 1.)  Plaintiff retorts that he was not aware, nor should he have been aware, of Defendants' conspiracy at the time of his resignation as Chair.  Plaintiff points to multiple factual allegations, including Plaintiff not learning of the dismissal proceedings against him until October 18, 2016, and Plaintiff claims Defendants concealed their conspiracy from him.  (Doc. No. 55 at 49–50.)  While it is possible that Plaintiff in fact learned or should have learned of the alleged conspiracy before October 18, 2016, taking Plaintiff's allegations as true and construing them in his favor here, the Court cannot hold that the statute of limitations bars Plaintiff's action in part.

### 2.   Intracorporate Conspiracy Doctrine

Defendants move to dismiss Plaintiff's civil rights conspiracy claim based on the intracorporate conspiracy doctrine, which attributes the conspiracies of a corporation's agents to the corporation itself.  (*Id.* at 53.)  Plaintiff responds that the intracorporate conspiracy doctrine does not apply here because he has alleged that Auburn employees conspired with others outside the institution and Defendants had a personal stake in the conspiracy.  (Doc. No. 61 at 16–20.)

The intracorporate conspiracy doctrine declares that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."  *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031,

1036 (11th Cir. 2000).  The doctrine's foundation is that if a corporation's agents' actions are attributable to the corporation, a meeting of the minds between two separate individuals or entities is not possible for the formation of a conspiracy.  *Id.*  However, the intracorporate conspiracy doctrine does not apply when the conspiracy includes individuals or entities outside the corporation.  *See Rehberg v. Paulk*, 611 F.3d 828, 854 (11th Cir. 2010); *Detris v. Coats*, 523 F. App'x 612, 615–16 (11th Cir. 2013).  Finally, Plaintiff erroneously asserts that the defense does not protect those who have an independent personal stake in the conspiracy's outcome.  (Doc. No. 61 at 17–20.)  Plaintiff cites to no binding Eleventh Circuit precedent adopting the personal stake exception to the intracorporate conspiracy doctrine; indeed, the Eleventh Circuit has expressly noted that it has neither adopted nor rejected the exception, and this Court declines to permit Plaintiff to avail himself of an exception that is unrecognized in this Circuit.  *See Grider v. City of Auburn*, 618 F.3d 1240, 1262–63 (11th Cir. 2010).

Here, the intracorporate conspiracy doctrine does not apply to the facts as alleged related to any purported civil rights conspiracy after May 2, 2016, which was the time at which individuals who were not employed by Auburn joined the alleged conspiracy.  (*See* Doc. No. 50 at 31–32 ¶ 169) ("Because of Thurow's position as Acting Chair, without the AIAA's consent, in the May 2, 2016 email, the Dellingers agreed to provide Thurow the information enclosed relative to Dr. Majdalani's grading of papers during the spring 2016 conference.").  Jay and Casey Dellinger were not agents of Auburn, and their inclusion in Defendants' conspiracy, as alleged by Plaintiff, removes the protection of the intracorporate conspiracy defense.  However, the intracorporate conspiracy doctrine does

31

apply to any allegations related to Plaintiff's resignation as Department Chair, which occurred before the Dellingers' involvement in the conspiracy. Plaintiff's action for civil rights conspiracy will be dismissed to the extent it asserts claims predicated on events prior to May 2, 2016.

H.  Count XI – Invasion of Privacy

Finally, Plaintiff accuses Thurow, Roberts, Winn, and Boosinger, in their individual capacities only, of invasion of privacy. (Doc. No. 50 at 139–41.) Alabama recognizes four types of tortious invasions of privacy:

> (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.

*Ex parte Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000) (quoting *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997)). Here, there is no allegation that Defendants appropriated some element of Plaintiff's personality for commercial use. Plaintiff, however, raises potential claims for the three remaining methods of privacy invasion. (*See* Doc. No. 50.)

1.  Intrusion Upon Seclusion

Plaintiff first asserts that Defendants intruded upon his seclusion. To prove this type of invasion of privacy, Plaintiff must show that Defendants "intentionally intrude[d], physically or otherwise, upon [his] solitude or seclusion . . . or his private affairs or concerns" in a manner that "would be highly offensive to a reasonable person." *Johnston*, 706 So. 2d at 702 (quoting Restatement (Second) of Torts § 652B (Am. L. Inst. 1977)).

32

The Supreme Court of Alabama has acknowledged examples of intrusion upon seclusion including "wiretapping or eavesdropping" and "opening private mail or examining a private bank account." *Id.* (quoting Restatement (Second) of Torts § 652B cmt. b (Am. L. Inst. 1977)). The Restatement, which the Alabama Supreme Court has relied upon, notes further examples, including "searching [a man's] safe or his wallet . . . or compelling him by a forged court order to permit an inspection of his personal documents." Restatement (Second) of Torts § 652B cmt. b (Am. L. Inst. 1977). The Alabama Supreme Court has added, "[I]f the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur." *Id.* (citing *Hogin v. Cottingham*, 533 So. 2d 525 (Ala. 1988)).

Here, Plaintiff claims that Defendants intruded upon his seclusion by wrongfully acquiring his confidential grading scores from the AIAA. (Doc. No. 50 at 139–40) ("Thurow physically intruded into a place where Dr. Majdalani secluded himself, by discovering his private affairs via his utilization of past relationships with AIAA representatives, and knowingly gaining access to information he knew he had no right to see and without otherwise seeking consent from the AIAA."). Plaintiff's right to have the grading sheets he provided to the AIAA kept confidential, much like one who uses a private bank account has a reasonable expectation that its contents will be held in confidence, is suspect and may well be susceptible to a summary judgment motion. Though the scores were created by Plaintiff, it is likely they belonged to the AIAA, not Plaintiff, and Plaintiff's expectation in their continued privacy was likely speculative. Nevertheless, taking Plaintiff's allegations as true for purposes of this Rule 12(b)(6) challenge, Plaintiff

33

secluded himself away from Auburn in his role at the AIAA and his actions at the AIAA were his private affairs. (*Id.*)  Plaintiff's allegation for intrusion upon seclusion, therefore, may proceed.

### 2. Publicity to Private Information

Plaintiff next asserts that Defendants publicized the allegations against him, including the EthicsPoint report.  (*Id.* at 140–41) ("Defendants communicated Dr. Majdalani's personal, private information verbally, in writing, and/or via the EthicsPoint Report to others . . . and the number of individuals receiving such was enough to make each substantially certain the matter would become public knowledge.").  To succeed on a claim against a defendant for making private information public, a plaintiff must show that another publicized "a matter concerning the private life of" the plaintiff, and "the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Johnston*, 706 So. 2d at 703 (quotation marks omitted) (quoting Restatement (Second) of Torts § 652D).  The Alabama Supreme Court adopted the Restatement's definition of publicity, which states, "[p]ublicity . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quotation marks omitted) (quoting Restatement (Second) of Torts § 652D cmt. a (Am. L. Inst. 1977)).

Here, Plaintiff claims Defendants shared private information about his affiliation with AIAA and his scoring of Auburn students' submissions for the AIAA. (Doc. No. 50 at 140–41.)  Plaintiff asserts Defendants spread this private information sufficiently to harm

Plaintiff's reputation at Auburn and elsewhere in the academic community.  (*Id.*)  While it is a close question whether the information shared "would be highly offensive to a reasonable person," Plaintiff's allegation that Defendants' proliferation of this information caused him reputational harm tends to indicate this information may be highly offensive.  Construing the facts alleged as true, the Court finds that a 12(b)(6) dismissal at this stage is not proper for Plaintiff's publicization of private facts allegation.

### 3.  False Light

Plaintiff finally contends that Defendants placed him in a false light by publicizing false claims related to the improperly received AIAA scores.  (Doc. No. 50 at 140) ("Defendants communicated Dr. Majdalani's personal, private information either verbally, in writing, and/or via the EthicsPoint Report to others, to place Dr. Majdalani in a false light . . . .").  The Supreme Court of Alabama has defined the elements of an action for false light.  That court has declared:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Ex parte Bole*, 103 So. 3d 40, 51–52 (Ala. 2012) (quotation marks omitted) (quoting *Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d 306, 348 (Ala. 2007)).

Here, Plaintiff's false light claim survives a Rule 12(b)(6) analysis.  In essence, Plaintiff alleges Defendants openly accused him of unethical and academically dishonest conduct.  This allegation, taken as true, establishes the elements of false light under

Alabama law.   First, as an academic, a field that necessarily takes academic honesty seriously, conveying accusations that Plaintiff acted unethically by improperly scoring Auburn's students at an AIAA competition would potentially "be highly offensive to a reasonable person."   *Id.*   Second, Plaintiff has alleged sufficient facts to sustain that Defendants knew "or acted in reckless disregard as to the falsity of the publicized matter." *Id.*  Because the AIAA sent correspondence stating that the scoring information provided was within normal ranges, this likely would have placed those publicizing this information on notice that their allegations could very well be based on improper data.  At a minimum, this issue should be explored through discovery before this Court considers dismissing it. Accordingly, Plaintiff's false light claim may proceed.

## IV.   CONCLUSION

Accordingly, it is hereby ORDERED as follows:

1. Defendants' motion to dismiss (Doc. No. 55) is GRANTED in part and DENIED in part.

2. All claims against Defendant Steven Leath are DISMISSED.

3. Steven Leath is hereby DISMISSED as a party to this action.

4. All claims against Defendant William C. Hardgrave in his official capacity are DISMISSED.   Only the claims against Defendant Hardgrave in his individual capacity will proceed.

5. The claims against Defendants R. James Goldstein and Lawrence A. Teeter in Count I are DISMISSED.

6.  Count I is DISMISSED in part.  The civil conspiracy claim in Count I is DISMISSED to the extent it relies on First Amendment retaliation (Count II), defamation (Count IX), and invasion of privacy (Count XI) <u>before</u> October 18, 2016.  The civil conspiracy claim in Count I that relies on First Amendment retaliation (Count II), defamation (Count IX), and invasion of privacy (Count XI) <u>after</u> October 18, 2016 may proceed. Further, the civil conspiracy action alleged in Count I related to the underlying federal claim in Count VII may proceed in its entirety.

7.  Count II is DISMISSED in part. The associative speech claim in Count II is DISMISSED.  The remaining claims in Count II will proceed.

8.  Count III is DISMISSED in its entirety.

9.  Counts IV, V, and VI are DISMISSED in part. The declaratory judgment requests in Counts IV, V, and VI are DISMISSED.  The remaining claims in those Counts will proceed.

10. Court VIII is DISMISSED in part.  The portion of this Count which relies on events prior to May 2, 2016 is DISMISSED.  The remaining portion of Count VIII will proceed.

11. Count X is DISMISSED in its entirety.

12. The motion to dismiss (Doc. No. 55) is DENIED in all other respects.

DONE this 7th day of September, 2022.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE